UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CEDRIC L.,

                        Plaintiff,                        20-CV-1876Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #9.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on September 14, 2017, alleging disability beginning January 23, 2017, at the age of 48, due to a stroke, hypertension, narrow blood vessels in the brain and depression. Dkt. #4, p.59.

On September 25, 2019, plaintiff and his wife appeared with counsel and testified at an administrative hearing before Administrative Law Judge ("ALJ"), William M. Weir. Dkt. #4, pp.33-57. Plaintiff testified that he was a Buffalo Police Officer for 22

years before he suffered a stroke while working and subsequently retired. Dkt. #4, pp.37-38 & 49-50. Plaintiff testified that he sometimes becomes confused and can't remember things. Dkt. #4, pp.38 & 41-42. He also suffers from headaches. Dkt. #4, p.38. He is not as strong as he was before the stroke and sometimes loses his balance going down stairs. Dkt. #4, p.41. He does not sleep well. Dkt. #4, p.43. He can cook, but does not do so when he is home alone because he often burns things and leaves the stove or oven on. Dkt. #4, pp.43-44.

Plaintiff's wife testified that since the stoke, she has had to remind him to take his medication and that plaintiff forgets to do things even if she writes them down and transposes numbers when writing. Dkt. #4, pp.51-52 & 55. He can't remember appointments even after recently discussing them with her and often forgets to pack items for her lunch even after they have discussed what to pack. Dkt. #4, p.53. She testified that plaintiff will drive by himself occasionally, but she is usually in the car with him and has noticed that he has difficulty making decisions about things such as which parking space to take in a parking lot. Dkt. #4, p.54.

Vocational Expert ("VE"), Rachel Duchon completed a Vocational Interrogatory on December 9, 2019. Dkt. #4, pp.210-212. When asked to assume an individual with plaintiff's age, education and past work experience who could work at medium exertion, but could not perform complex work or perform dangerous work at unprotected heights or around dangerous chemicals, tools or machines, the VE indicated that plaintiff could not perform his past work, but could work as a hand

packager and laundry laborer, each of which were unskilled, medium exertion positions. Dkt. #4, pp.211-212.

The ALJ rendered a decision that plaintiff was not disabled on February 13, 2020. Dkt. #4, pp.19-28. The Appeals Council denied review on October 27, 2022. Dkt. #4, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on December 18, 2020. Dkt. #1.

## FACTUAL BACKGROUND

On January 18, 2017, plaintiff was examined by Physician Assistant ("PA"), Michael Brynildsen for worsening hypertension and complaints of tension headaches. Dkt. #4, pp.249-250. His blood pressure medication was adjusted and he was referred to DENT Neurologic Institute ("DENT"), for his headaches with instructions to continue ibuprofen for pain. Dkt. #4, p.249.

Plaintiff presented to the Erie County Medical Center Emergency Department on the morning of January 23, 2017 because he was having difficulty finding words to describe things. Dkt. #4, p.226. Upon examination, subtle expressive difficulty was detected. Dkt. #4, p.226. His neurologic exam demonstrated mild stuttering and mild naming difficulty with good comprehension and repetition, no focal weakness or sensory loss, no visual field cuts and no apraxia. Dkt. #4, p.262. The stroke team determined that there was enough disarticulation to categorize a stroke scale of 1. Dkt. #4, p.226. Plaintiff was transferred to Buffalo General Hospital where an

MRI revealed high grade stenosis of the left middle cerebral artery ("MCA"), and multiple acute left MCA territory infarcts. Dkt. #4, p.272. He was administered Heparin and Aspirin. Dkt. #4, p.275. He underwent an angioplasty of the left MCA stenosis on February 8, 2017. Dkt. #4, p.310. Plaintiff was discharged on February 10, 2017. Dkt, #3, p.315.

On March 27, 2017, plaintiff reported to Dr. Fazili that his speech was gradually improving and denied any headaches. Dkt. #4, p.489.

On March 31, 2017, plaintiff and his wife reported to Physician Assistant Emily Hennessy at UB Neurosurgery that he still had some difficulty with word finding and some slower cognition compared to his baseline. Dkt. #4, p.430. PA Hennessy observed slight hesitancy with wordfinding. Dkt. #4, p.431.

On June 8, 2017, plaintiff reported to Robert Sawyer, M.D., at UB Neurosurgery that he was doing well but did not feel as though he was back to his baseline. Dkt. #4, pp.297-298. He reported generalized fatigue, difficulty writing and remembering how to spell. Dkt. #4, p.298. Plaintiff denied headache, weakness, numbness or vision changes. Dkt. #4, p.294. He was observed to be fluent and repeat well, with an ability to follow commands. Dkt. #4, p.298.

Follow up with neurosurgeon Adnan Siddiqui at UB Neurosurgery on October 19, 2017 following a repeat brain MRI/MOVA Flow analysis noted that plaintiff

still had some difficulty with word finding, but remained stable. Dkt. #4, p.469.

At a consultative internal medicine examination with Samuel Balderman, M.D., on November 8, 2017, plaintiff reported that his short-term memory and speech continued to be impaired following the stroke. Dkt. #4, p.471. Dr. Balderman observed that plaintiff's speech was slightly slowed and opined that plaintiff had mild limitation in verbal communication. Dkt. #4, p.473. Dr. Balderman noted that plaintiff's "cognitive function may require review." Dkt. #4, p.473.

Susan Santarpia, Ph.D., conducted a consultative psychiatric examination on November 8, 2017. Dkt. #4, p.475. Plaintiff reported that he had driven himself to his appointment, accompanied by his wife. Dkt. #4, p.475. He reported that he was able to dress, bathe and groom himself; clean; wash laundry; and manage his own money. Dkt. #4, p.477. Plaintiff reported socialization with friends and family and activities including watching television; listening to music; going out to dinner; going out to movies; using his phone; engaging with social media; and playing games on his phone. Dkt. #4, p.477. He noted some symptoms of depression, *to wit*, difficulty falling asleep, decreased appetite and some crying spells and irritability since his stroke, but stated that he did not want counseling or medication. Dkt. #4, p.475. He also noted some short-term memory deficits and concentration difficulties. Dkt. #4, p.475.

Dr. Santarpia observed that plaintiff's demeanor and responsiveness to questions was cooperative; his manner of relating and overall presentation was

adequate; his eye contact was appropriate; his speech intelligibility was fluent; his expressive and receptive language was adequate; his thought process was coherent and goal directed; and his affect was full range and appropriate in speech and thought content. Dkt. #4, p.476. Plaintiff's recent and remote memory skills were determined to be intact based upon his ability to recall 3 out of 3 objects immediately and 2 out of 3 objects after a delay, as well as his ability to recite 5 digits forward and 3 in reverse order, but his attention and concentration were determined to be mildly impaired based upon his inability to do two-step mathematical calculations and serial subtraction. Dkt. #4, p.477. Plaintiff's cognitive functioning was estimated in the average range of ability, with a general fund of information appropriate to his experience. Dkt. #4, p.477.

> Dr. Santarpia opined that plaintiff was
>
> able to understand, remember, and apply simple as well as complex directions and instructions; use reason and judgment to make work-related decisions, interact adequately with supervisors, co-workers, and the public; sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, regulate emotions, control behavior, and maintain well-being; maintain personal hygiene and appropriate attire, and be aware of normal hazards and take appropriate precautions within normal limits. The results of the present evaluation do not appear to be consistent with any psychiatric problem that would significantly interfere with the claimant's ability to function on a daily basis.

Dkt. #4, pp.477-478. Dr. Santarpia diagnosed plaintiff with rule out adjustment disorder with depressed mood and recommended positive compensatory coping skills through individual psychiatric therapy, but noted that plaintiff did not wish to engage in treatment. Dkt. #4, p.478.

On December 11, 2017, state agency psychiatric consultant G. Kleinerman, M.D., opined that plaintiff's psychological conditions were non-severe. Dkt. #4, p.480.

On December 19, 2017, state agency medical consultant, James Lawrence, M.D., opined that plaintiff had no limitations. Dkt. #4, p.483.

Plaintiff consulted with Shivang Joshi, M.D., at the DENT Neurologic Institute ("DENT"), on May 31, 2018, for complaints of headaches dating back to 2016, which have not worsened either in frequency or intensity. Dkt. #4, p.520. Plaintiff was observed to have a history of "MCA stroke, with minimal residual." Dkt. #4, p.520. Dr. Joshi observed normal mental status, appropriate fund of knowledge, normal language and recent and remote memory. Dkt. #4, p.521. Dr. Joshi diagnosed chronic tension-type headache unrelated to his prior CVA and prescribed a trial of a low dose tricyclic antidepressant, noritriptuline. Dkt. #4, p.521.

On June 18, 2018, Dr. Fazili observed mild dysphasia. Dkt. #4, p.486.

Followup with Dr. Siddiqui on November 1, 2018 following another brain MRI/MOVA Flow analysis determined that plaintiff continued to remain entirely stable with a diagnosis of occlusion and stenosis of the left middle cerebral artery and cerebral atherosclerosis. Dkt. #4, pp.494-495 & 517-519.

Nurse Practitioner Kelly Stockdill examined plaintiff at DENT on August 28, 2019. Dkt. #4, pp.563-566. NP Stockdill observed normal language, appropriate fund of knowledge and recent and remote memory. Dkt. #4, p.565. Plaintiff reported that he had discontinued noritriptyline for lack of effectiveness and that he sometimes used over the counter analgesics with good effect. Dkt. #4, p.564. NP Stockdill advised plaintiff to take magnesium oxide twice a day for prevention of headaches and limited plaintiff's intake of over the counter analgesics to no more than 2-3 times per week. Dkt. #4, p.565.

Plaintiff underwent evaluation by Vernice Bates, M.D., at DENT on September 7, 2019. Dkt. #4, pp.560-563. Plaintiff and his wife expressed concern about plaintiff's "memory issues," reporting that plaintiff's memory has "been poor" since his stroke. Dkt. #4, p.560. Dr. Bates noted that as best as she could tell, plaintiff's memory issues had neither progressed nor improved since his stroke. Dkt. #4, p.560. Upon neurological examination, Dr. Bates noted that plaintiff:

> follows all one and two-step commands. He is oriented x3. Attention and concentration is good. No dysphoria. No dysathria. No dysphasia. On aphasia testing, he has some difficulty with more complex thoughts but has fluent speech and names although had some difficulty with some subsets. Patient names and repeats well. On formal memory testing, he is able to get two of three test objects in 5 minutes. He scored 28 out of 30 on mini mental status testing. His fund of general information is good.

Dkt. #4, pp.561-562. Dr. Bates recommended an MRI scan of the brain to ensure plaintiff was not having new strokes, as well as a NeuroQuant study to evaluate hippocampal volume to ensure there isn't another cause for his memory loss. Dkt. #4,

p.562. She also ordered screening labs for treatable causes for memory loss. Dkt. #4, p.562.

### DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is

not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 23, 2017; (2) plaintiff's status post cerebrovascular accident ("CVA"), and obesity constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform medium work[1] with the following limitations: no complex work and

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.
20 C.F.R. § 404.1567(c).

no work at dangerous, unprotected heights or around dangerous chemicals, tools or machines; and (5) plaintiff was not capable of performing his past work as a police officer, but was capable of working as a hand packager or laundry laborer, each of which were unskilled, medium exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #4, pp.21-28.

Plaintiff argues that the ALJ failed to address plaintiff's headaches at step two or to account for their effect in plaintiff's RFC despite the fact that plaintiff sought treatment for his headaches and providers at DENT opined that his headaches were unrelated to his prior CVA. Dkt. #5-1, pp.10-12.  Plaintiff also argues that the ALJ found Dr. Balderman's opinion persuasive, yet failed to reconcile his RFC with Dr. Balderman's opinion that plaintiff had a mild limitation in verbal communication. Dkt. #4, pp.12-15. Furthermore, plaintiff argues that the ALJ failed to develop the record in accordance with Dr. Balderman's indication that plaintiff's cognitive function might require review and improperly interpreted treatment notes to determine plaintiff's neurologic/cognitive limitations following his stroke. Dkt. #5-1, pp.15-21.

The Commissioner responds that the ALJ did consider plaintiff's headaches, but appropriately relied upon the absence of any indication of functional restrictions related to this condition in determining plaintiff's RFC. Dkt. #7-1, pp.19-20. The Commissioner also responds that Dr. Balderman's assessment of mild limitations in verbal communication was acknowledged by the ALJ and consistent with the ALJ's determination that plaintiff's residual speech deficits were not significant enough to

interfere with his ability to communicate in a work setting involving unskilled work. Dkt. #7-1, pp.21-24. The Commissioner argues that the ALJ was under no obligation to seek additional opinions regarding plaintiff's cognitive abilities given the evidence in the record relating to plaintiff's neurological and cognitive functioning. Dkt. #7-1, pp.25-30. Thus, the Commissioner argues that substantial evidence supports the ALJ's determination that plaintiff was capable of substantial gainful employment. Dkt. #7-1, pp.16-18.

        The ALJ's RFC is supported by substantial evidence. Contrary to plaintiff's argument, the ALJ acknowledged plaintiff's complaint of headaches and diagnosis of chronic tension-type headache, however, there is nothing in the record that would suggest any functional limitations related to this diagnosis. Dkt. #4, p.25. Moreover, the ALJ acknowledged Dr. Balderman's opinion that plaintiff had a mild limitation in verbal communication, but that opinion is not inconsistent with Dr. Santarpia's observation that plaintiff's expressive and receptive language was adequate and her opinion that plaintiff was able to interact adequately with supervisors, co-workers, and the public. Dkt. #4, pp.24 & 476-478. Thus, the opinions of Dr. Balderman and Dr. Santerpia, both of which were deemed persuasive by the ALJ, are not inconsistent. Finally, Dr. Santarpia's consultative psychiatric examination assessed plaintiff's cognitive ability, estimating plaintiff's cognitive functioning in the average range of ability and opining that plaintiff was able to understand, remember and apply simple as well as complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers and the public; and sustain concentration and

perform a task at a consistent pace. Dkt. #4, pp.477-478. The ALJ's determination that plaintiff could not perform complex work, which is more restrictive than Dr. Santerpia's opinion, accounts for Dr. Bates' observation that plaintiff had "some difficulty with more complex thoughts." Dkt. #4, pp.561-562. *See My Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp.3d 100, 106 (W.D.N.Y. 2021) (imposition of more restrictive RFC is not grounds for remand). The Court notes that Dr. Bates' observations upon examination are otherwise materially consistent with Dr. Santerpia's observations and opinions.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #5), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #7), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:     Buffalo, New York**
**September 29, 2022**

                                                                __s/ H. Kenneth Schroeder, Jr.__
                                                                **H. KENNETH SCHROEDER, JR.**
                                                                **United States Magistrate Judge**